**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-153 (RDM)** |
| **v.** | : | |
| | : | |
| **ZYLAS HAMILTON,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. The defendant, Zylas Hamilton, has pleaded guilty to two misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Hamilton to 30 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, a fine, and, consistent with the plea agreement in this case, $500 in restitution.

### I.    Introduction

Defendant Zylas Hamilton, a 30-year-old plumber from Blueridge, Georgia, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the

1

peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Hamilton pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). The government's recommendation is supported by the defendant's: (1) claim that he took part in violence against police officers, saying, "we rushed them"; (2) admission that he witnessed violence before entering the Capitol building, including saying that he had been "maced, tear gassed and shot with a rubber bullet in the shoulder"; (3) continued post-January 6 statements in support of political violence, saying that he would "die or do 20 years before my kids grow up in the country these people are trying to creat[e]"; and (4) admission on Facebook that he deleted video evidence of the events of January 6.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Hamilton's crime support a sentence of 30 days of incarceration in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.       **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 24, the Statement of Offense.

*Defendant Hamilton's Role in the January 6, 2021 Attack on the Capitol*

The defendant, Zylas Hamilton, traveled from Chattanooga, Tennessee to Washington D.C. to attend former president Donald Trump's rally at the Ellipse on January 6, 2021. He later walked to the Capitol building and joined the crowd outside. Throughout the day, Hamilton wore an olive-green baseball cap, a black hooded shirt, a black jacket, and a black backpack. He also wore a black mask over his nose and mouth that obscured his face while inside the Capitol. *See Image 1.*



*Image 1: A screenshot from an open-source video shows Hamilton outside the Capitol in the green hat, black hood, and black sweatshirt he wore that day. Once inside the Capitol, Hamilton wore a mask that obscured his face.*

Hamilton entered the Capitol building through the Senate Wing Door at 2:22 p.m. while a blaring alarm sounded. As he walked through the door, other rioters were climbing through the two broken windows on either side of the door. *See Image 2.*



*Image 2: A screenshot from CCTV footage shows Hamilton (yellow circle) entering the Capitol through the Senate Wing Door.*

Once inside, Hamilton proceeded through the Capitol's first floor, including the Crypt. *See Image 3.* He then returned to the area near the Senate Wing Door.



*Image 3: A screenshot from CCTV footage shows Hamilton (yellow circle) in the Crypt.*

Hamilton exited the Capitol by climbing through a window adjacent to the Senate Wing doors at approximately 2:36 p.m. *See Image 4.* In total, he remained in the Capitol building for approximately 14 minutes.



*Image 4: A screenshot from CCTV footage shows Hamilton (yellow circle) exiting the Capitol by climbing through a window next to the Senate Wing Door.*

*Social Media Posts*

After the attack on the Capitol, Hamilton used Facebook to brag about his conduct, post images of himself inside the Capitol building, admit that he knew his actions were criminal and could subject him to jail time, and admit that he deleted digital evidence of what he did.

In a Facebook post on January 6, 2021, Hamilton posted a picture of himself inside the Capitol and wrote, "fight for your country folks… we took our capital back today." *See Image 5.*

He also bragged about his involvement, saying, "I was in the capital building" and "I'm safe after being maced, tear gassed and shot with a rubber bullet in the shoulder. We got in and made our statement." When another Facebook user asked Hamilton, "why'd they gas u and stuff!?!" he responded, "because we rushed them." *See Image 6.*[2]

---

[2] Despite Hamilton's statement that "we rushed them," the government does not have evidence that Hamilton assaulted officers on January 6.



*Images 5 and 6: Screenshots from Hamilton's Facebook account posted on January 6.*

Hamilton also filmed a Facebook Live video of himself inside the U.S. Capitol on January 6, but later removed the footage from his Facebook profile. A witness who spoke to FBI agents provided screenshots of the video to the FBI. *See Images 7 and 8.* The witness said that, in the video, one could see crowds moving through the U.S. Capitol building in front of the person filming, then the person filming turns the camera around to film himself. The witness said, and the screenshots show, that the video reveals Hamilton wearing a mask over his nose and mouth and a green hat with an orange logo.



*Images 7 and 8: Screenshots from a video that Hamilton posted to Facebook, then deleted.*

Also on January 6, 2021, the day the riot occurred, Hamilton had the following Facebook conversation with "C.C.," in which Hamilton expressed a willingness to die or go to jail in order to achieve his political ambitions:

- C.C.: Remove your posts
- HAMILTON: Why?
- C.C.:  Cause they can find you
- HAMILTON: If
- HAMILTON: Idc
- C.C.: I'm telling you they will prolly prosecute you
- C.C: They are saying 20 years Z what if that happens. This country us not worth it Son the way things are now days. We are in the last days Jesus will take care of us
- HAMILTON: I'll die or do 20 years before my kids grow up in the country these people are trying to creat

7

In a Facebook post responding to multiple commenters on the following day, January 7, 2021, Hamilton posted the following comment, admitting that he was shot at with less-than-lethal munitions while on Capitol grounds: "I was there to. Upfront at the scaffolding. They shot at random times for no reason. I was shot and I was just standing still minding my business watching everything unfold."

Two days after the riot, on January 8, 2021, Hamilton had the following Facebook conversation with "H.C.," in which he minimized the events of January 6:

- H.C.: You was in D.C when all this shit happen right?
- HAMILTON: Yes
- H.C.: Was it trump supporters who destroyed the capital? Or someone else that made it look like them?
- HAMILTON: Both
- HAMILTON: But honestly... a window was broken. We could have burnt that place to the ground
- H.C.: My retarded ass sister thinks it was allll trump supporters and that he had it planned to destroy the capital so he could stay.
- HAMILTON: Neh... that storm of the Capitol was about the bs that conservatives have put up with for 4 fucking years...
- HAMILTON: He didn't promote the violence or condone it. We made that decision ourselves

On January 8 and 9, 2021, Hamilton had the following Facebook conversation with, "K.C.F.":

- K.C.F.: Did u get in trouble for being there
- HAMILTON: Not yet
- K.C.F.: Moma said that's why u deleted that video cuz they were getting ppl. I don't watch the news so I didn't know. Lol. Maybe u won't.
- HAMILTON: Not unless somebody tells on me
- K.C.F.: Surely they won't.
- HAMILTON: We'll see lol

On January 12, 2021, Hamilton had the following conversation with "S.W." on Facebook in which he acknowledged deleting videos from January 6:

- S.W.: Hey... Just checking in on you. I hope you deleted those videos from the 6th.

- HAMILTON: I did awhile back
- HAMILTON: Everything is ok. Just waiting on the feds to come get me
- S.W.:  Did you have your face covered the whole time?

*Defendant's Interview*

In his post-plea interview with the government, Hamilton admitted that he saw chaotic confrontations between police officers and rioters, experienced tear gas, and was shot with some kind of less-than-lethal round, all before entering the building. He said that when he entered, he knew it was wrong to do so and he knew that if he did, he was likely to go to jail.

Although Hamilton said that he regretted his conduct, he also said that his posts on Facebook, including the one in which he claimed, "we rushed [police officers]," were meant to seek "clout" and show him to be tough. He also admitted that he deleted social media posts he made about January 6.

*The Charges and Plea Agreement*

On March 27, 2024, the United States charged Hamilton by a four-count Information with violating 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds) (Count One); 18 U.S.C. § 1752(a)(2) (disorderly and disruptive conduct in a restricted building or grounds) (Count Two); 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three); and 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). On May 15, 2024, pursuant to a plea agreement, Hamilton pleaded guilty to Counts Three and Four. By plea agreement, Hamilton agreed to pay $500 in restitution to the Architect of the Capitol.

## III.   Statutory Penalties

Hamilton now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Hamilton faces up to six months of

imprisonment and a fine of up to $5,000 on each count. Hamilton must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are both Class B Misdemeanors, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days of incarceration.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Hamilton's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Hamilton, the absence of violent or destructive acts is not a mitigating factor. Had Hamilton engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Hamilton's case is the fact that he witnessed and was subject to violence before he entered the Capitol. He claimed to have been maced, tear gassed, and shot with a rubber bullet—none of those things dissuaded him from going inside. He also claimed that "we rushed them," referring to police officers, which demonstrates his intent and

understanding that he was part of a violent mob that outnumbered and endangered the safety of police officers protecting the Capitol.

Another important factor is Hamilton's post-January 6 online rhetoric. On Facebook, he posted discussions about the violence he witnessed, he expressed support for violence in pursuit of political ends, and he bragged about his conduct on January 6. Hamilton also claimed that he deleted video evidence of what he did on January 6.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

**B.  Hamilton's History and Characteristics**

As set forth in the PSR, Hamilton is a 30-year-old business owner from Blueridge, Georgia. His criminal history consists of the following criminal convictions:

- In 2017, Hamilton was charged with Driving Without a Valid License and Failure to Appear. He received a sentence of 2 days of incarceration, suspended, 11 months and 28 days probation, and a $130 fine. PSR ¶ 25.

- In 2019, Hamilton was charged with Following too Closely and Leaving Scene of Accident with Damage to Vehicle. He received sentences of 30 days in the County Workhouse, and 6 months in the County Workhouse, both of which were suspended on good behavior, and he was placed on probation. PSR ¶ 26.

- Also in 2019, Hamilton was charged with Driving without a Valid License. He received a sentence of 10 days of incarceration, suspended, and a $675 fine. PSR ¶ 27.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration. Hamilton's online statements illuminate his serious risk of recidivism. On January 6, and in the days shortly after, Hamilton expressed pride in the actions he took, bragging about his conduct. He also expressed a willingness to "die" or to go to jail for his political desires. The risk of recidivism here is real.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3] This Court must sentence Hamilton based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

*United States v. Jeremy Grace*, 21-CR-492 (RDM), presents facts similar to those in this case (although Grace pleaded guilty to 18 U.S.C. § 1752(a)(1)). This Court sentenced Grace to 21

---

[3] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

days of incarceration. Grace grouped himself with Proud Boys on January 6 even after hearing the group was "expecting violence." Like Hamilton, Grace saw signs he should not enter the Capitol but entered anyway, in his case the deployment of chemical irritants, property damage, and warnings to leave. Grace also deleted video evidence after January 6, as did Hamilton, although Grace went further and lied to the FBI about his conduct. After January 6, also like Hamilton, Grace shared selfie-style photos and videos outside and inside the Capitol on social media, although Grace also profited from his January 6 participation by selling merchandise.

In *United States v. Cody Lee Tippett*, 23-CR-337 (CRC), Judge Cooper sentenced the defendant to 30 days of incarceration, and the facts in that case are also similar to these. Following his attendance at the rally, Tippett approached the Capitol from the West side, where he witnessed rioters pushing police and tear gas, as did Hamilton. Tippett subsequently followed the mob through the inaugural scaffolding and entered the Capitol through the Senate Wing Door less than 10 minutes after they were initially breached. Hamilton entered the same doors at nearly the same time. While inside, Tippett posed for photos, as did Hamilton. Tippet also moved chairs to help keep the metal gates of the Capitol Visitor Center from closing.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence

14

differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[4] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Hamilton must pay $500 in restitution, which reflects in part the role Hamilton played in the riot on January 6.[5] Plea Agreement at ¶ 12. As the plea agreement

---

[4] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[5] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Hamilton's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 91.

## VI.      Fine

The defendant's convictions subject him to a statutory maximum fine of $5,000 on Count Three and $5,000 on Count Four. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines require a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a) (2023). Here, the defendant's financial assets set forth in the PSR suggest that the defendant is unable, and is unlikely to become able, to pay a fine. *See* PSR ¶ 72.

## VII.     Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days of incarceration on Count Three and 36 months of probation on Count Four. The government also requests that this Court impose 60 hours of community service, a fine, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Hamilton's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Eric W. Boylan*
Eric W. Boylan
Assistant U.S. Attorney
Texas Bar No. 24105519
Phone: 202-815-8608
Email: Eric.Boylan@usdoj.gov
601 D Street NW
Washington, D.C. 20001